## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Northern Division)

WILLOWBROOK APARTMENT
ASSOCIATES, LLC
    6310 Greenspring Ave
    Baltimore, MD 21209

MT. WASHINGTON, LLC
    2613 Cabover Drive
    Hanover, MD 21076,

THE COLLEGE GARDENS CORPORATION
    11 E. Fayette Street
    Baltimore, MD 21202,

TILBURY LIMITED PARTNERSHIP
    2613 Cabover Drive
    Hanover, MD 21076

STRATFORD APARTMENTS, LLLP
    1025 Cranbrook Road
    Cockeysville, MD 21030,

SALISBURY ALLIANCE REALTY, LLC
    600 Washington Ave., Suite 300
    Towson, MD 21204,

TIDE MILL REALTY, LLC
    925 Eastern Shore Drive, Suite 1
    Salisbury, MD 21804,

ADAMS HOUSING, LLC
    100 W. Main Street, Suite 203
    Salisbury, MD 21801,

APPLE PARTNERSHIP, LLP
    312 West Main Street
    Salisbury, MD 21801,

CHANDLER RENTALS, LLC
    312 West Main Street
    Salisbury, MD 21801,

**Civil Action No.**

GNI, LLC
    312 West Main Street
    Salisbury, MD 21801,

L & S PROPERTIES, LLP
    312 West Main Street
    Salisbury, MD 21801,

RCP, LLC
    312 West Main Street
    Salisbury, MD 21801,

RAINBOW PARTNERSHIP, LLP
    312 West Main Street
    Salisbury, MD 21801,

RSWL ASSOCIATES, LLP
    312 West Main Street
    Salisbury, MD 21801,

RSWL-TWO ASSOCIATES, LLP
    312 West Main Street
    Salisbury, MD 21801,

CHANDLER TRUSTS, LLP
    613 N. Division Street
    Salisbury, MD 21081,

HE, LLC
    312 West Main Street
    Salisbury, MD 21801,

A&J RENTALS, LLC
    312 W. Main Street
    Salisbury, MD 21801,

MARCH MOR, LLC
    312 W. Main Street
    Salisbury, MD 21801,

COLUMBIA CHOICE APARTMENTS, LLC
    5351 Harpers Farm Road
    Columbia, MD 21044,

COLUMBIA STONEHAVEN ASSOCIATES, LLC
    7030 Gentle Shade Road,
    Columbia, MD 21046,

And

OCEANS ALLIANCE REALTY, LLC
    3603 Glengyle Ave.
    Baltimore, MD 21215,


                Plaintiffs,

   vs.

MAYOR & CITY COUNCIL OF BALTIMORE
    Serve On:
    Dana P. Moore, Acting City Solicitor
    100 N. Holliday Street, Ste. 101
    City Hall
    Baltimore, MD 21202,

HOWARD COUNTY, MARYLAND
    Serve on:
    Calvin B. Ball III, County Executive
    George Howard Building
    3430 Court House Drive
    Ellicott City, MD 21043

    Serve on:
    Gary W. Kuc, County Solicitor
    George Howard Building
    3450 Court House Drive
    Ellicott City, MD 21043,

And

CITY OF SALISBURY
    Serve on:
    Julia Glanz
    125 N. Division Street, Room 304
    Salisbury, MD 21801,

                Defendants.

## COMPLAINT

Plaintiffs, Willowbrook Apartment Associates, LLC, Mt. Washington, LLC, The College Gardens Corporation, Tilbury Limited Partnership, Stratford Apartments, LLLP, Salisbury Alliance Realty, LLC, Tide Mill Realty, LLC, Adams Housing, LLC, Apple Partnership, LLP, Chandler Rentals, LLC, GNI, LLC, L & S Properties, LLP, RCP, LLC, Rainbow Partnership, LLP, RSWL Associates, LLP, RSWL-Two Associates, LLP, Chandler Trusts, LLP, HE, LLC, A&J Rentals, LLC, March Mor, LLC, Columbia Choice Apartments, LLC, Columbia Stonehaven Associates, LLC, and Oceans Alliance Realty, LLC, (collectively "Plaintiffs"), by and through their undersigned attorneys, Nelson Mullins Riley & Scarborough, LLP, respectfully file this Complaint against Defendants, Mayor and City Council of Baltimore ("Baltimore City"), Howard County, Maryland ("Howard County"), and the City of Salisbury ("Salisbury") (collectively "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs challenge three similar, recently enacted local government laws:

a.      In Baltimore City, the Rent Increase Protection Act (Council Bill No. 20-0526), enacted on May 19, 2020 (the "Baltimore City Act"), attached as **Exhibit 1**;

b.      In Howard County, the Rental Protection and Stability Act (Council Bill No. 33-2020), enacted on May 23, 2020 (the "Howard County Act"), attached as **Exhibit 2**; and

c.      In Salisbury, an Ordinance of the City of Salisbury to Amend Chapter 15.26 Rental of Residential Premises of the Salisbury City Code by Adding Subsection 15.26.035 Rent Increases Barred During States of Emergency and Authorizing the Mayor to Issue

Such Executive Orders as Are Necessary to Protect Tenants from Abuse (Ordinance No. 2599), enacted on June 1, 2020 (the "Salisbury Act"), attached as **Exhibit 3**. In all aspects relevant to this Complaint, the Baltimore City Act, the Howard County Act, and the Salisbury Act (collectively the "Acts") are materially the same.

2.      Plaintiffs are housing providers that own residential rental properties in Baltimore City, Howard County, or Salisbury.

3.      In relevant part, the Acts preclude any housing provider from increasing rent or charging late fees during the Governor's declared state of catastrophic health emergency.[1]  The Acts also preclude any housing provider from notifying a tenant of an anticipated rent increase during the Governor's declared emergency or within ninety (90) days (or three (3) months, under the Howard County Act) after the emergency ends.

4.      Additionally, where a tenant has already agreed to a rent increase, the Acts retroactively void the agreement—and require the housing provider to send written notice to the tenant directing the tenant to disregard the rent increase—if the rent increase has taken effect or would take effect during the Governor's declared emergency.[2]

---

[1] On March 5, 2020, Governor Lawrence J. Hogan declared a catastrophic health emergency in the State of Maryland based on the spread of the novel coronavirus, SARS-CoV-2, and the disease it causes, COVID-19.

[2] Rent increases generally occur upon the expiration of a tenant's lease term and, if agreed to by the tenant, take effect during the tenant's next lease term.  Housing providers typically send a lease renewal proposal (which may include a notice of rent increase) seventy (70) to one hundred (100) days before the expiration of the tenant's current lease term.  Tenants generally agree to a lease renewal (and any attendant rent increase) in one of two ways: (a) by signing a new lease form; or (b) where the initial lease includes an automatic renewal clause, by not rejecting the renewal proposal within a specified period of time, usually around sixty (60) days before the end of the current lease term.  Once a tenant agrees to a lease renewal, the new rental amount vests in the new lease.

5.      While well-intentioned in their efforts to protect financially-vulnerable tenants during an intensely difficult time, the Acts are too blunt an instrument to pass constitutional muster and will visit severe, and in some cases multiplicative, harms on Plaintiffs and similarly situated housing providers, who are trying to navigate serious property management concerns during a pressing financial and public health crisis.

6.      In particular, the Acts apply in a blanket and retroactive manner; they are not tailored in any way to the interest of protecting people who have been particularly affected by the public health emergency underlying the Governor's emergency declaration or its related economic ramifications.  They have no have no exceptions and no mechanisms for a housing provider to seek an exception based on its or the tenant's individual circumstances or particular conditions affecting the rental property.

7.      Exacerbating their overbreadth and retroactive effect, the Acts, while purportedly temporary in nature, have no definitive (or even anticipated) end-date.  They will run as long as the state of emergency lasts, and for ninety (90) days thereafter (or three (3) months thereafter, under the Howard County Act).

8.      Accordingly, the Acts violate Plaintiffs' rights under the United States Constitution and Maryland Constitution in at least the following ways: (a) by taking property unlawfully and without any (let alone just) compensation; (b) by infringing retroactively on Plaintiffs' vested property and contractual rights; (c) by violating Plaintiffs' due process and equal protection rights; and (d) by impairing Plaintiffs' prior and existing contractual agreements in violation of the contracts clause of the Unites States Constitution.

9.      For the reasons set forth in this Complaint, the Court should grant Plaintiffs' request for immediate declaratory and injunctive relief, invalidate the Acts, and award Plaintiffs all other relief requested herein.

**PARTIES**

10.      Plaintiff Willowbrook Apartment Associates, LLC ("Willowbrook") owns two hundred ninety-eight (298) residential rental units in Baltimore City.  As a result of the Baltimore City Act, Willowbrook has been retroactively deprived of its vested rights in settled, agreed-upon rent increases. As long as the Baltimore City Act remains in effect, it will adversely affect the services Willowbrook provides to its tenants, as well as Willowbrook's ability to receive a fair return on its properties.  *See* Declaration of Sean Avery, attached as **Exhibit 4**.

11.      Plaintiff Mt. Washington, LLC ("Mt. Washington") owns one hundred sixty-four (164) residential rental units in Baltimore City.  As a result of the Baltimore City Act, Mt. Washington has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Baltimore City Act remains in effect, it will adversely affect the services Mt. Washington provides to its tenants, as well as Mt. Washington's ability to receive a fair return on its properties.  *See* Declaration of Jane Clauson, attached as **Exhibit 5**.

12.      Plaintiff The College Gardens Corporation ("College Gardens") owns three hundred seventy-one (371) residential rental units in Baltimore City, Maryland.  As a result of the Baltimore City Act, College Gardens has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Baltimore City Act remains in effect, it will adversely affect the services College Gardens provisions to its tenants, as well as College Gardens' ability to receive a fair return on its properties. *See* Declaration of Katherine Kelly Howard, Esq., attached as **Exhibit 6**.

13.     Plaintiff Tilbury Limited Partnership ("Tilbury") owns two hundred and ninety (290) residential rental units in Howard County, Maryland.  As a result of the Howard County Act, Tilbury has been retroactively deprived of its vested rights in settled, agreed-upon rent increases. As long as the Howard County Act remains in effect, it will adversely affect the services Tilbury provides to its tenants, as well as Tilbury's ability to receive a fair return on its properties.  *See* Declaration of Jane Clauson, attached as **Exhibit 7**.

14.     Plaintiff Stratford Apartments, LLLP ("Stratford") owns thirty (30) residential rental units in Baltimore City.  As a result of the Baltimore City Act, Stratford has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Baltimore City Act remains in effect, it will adversely affect the services Stratford provides to its tenants, as well as Stratford's ability to receive a fair return on its properties.  *See* Declaration of Pamela Newland, attached as **Exhibit 8**.

15.     Plaintiff Salisbury Alliance Realty, LLC ("Salisbury Alliance") owns ninety-six (96) residential rental units in Salisbury.  As a result of the Salisbury Act, Salisbury Alliance has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Salisbury Alliance provides to its tenants, as well as Salisbury Alliance's ability to receive a fair return on its properties.  *See* Declaration of Bret Hopkins, attached as **Exhibit 9**.

16.     Plaintiff Tide Mill Realty, LLC ("Tide Mill") owns one hundred and four (104) residential rental units in Salisbury.  As a result of the Salisbury Act, Tide Mill has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Tide Mill provides to its

tenants, as well as Tide Mill's ability to receive a fair return on its properties.  *See* Declaration of Bret Hopkins, attached as **Exhibit 10**.

17.     Plaintiff Adams Housing, LLC ("Adams Housing") owns sixty-three (63) residential rental units in Salisbury.  As a result of the Salisbury Act, Oceans Alliance has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Adams Housing provides to its tenants, as well as Adams Housing's ability to receive a fair return on its properties.  *See* Declaration of Kristine Adams, attached as **Exhibit 11**.

18.     Plaintiff Apple Partnership, LLP ("Apple") owns six (6) residential rental units in Salisbury.  As a result of the Salisbury Act, Apple has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Apple provides to its tenants, as well as Apple's ability to receive a fair return on its properties.  *See* Declaration of Gary Chandler, attached as **Exhibit 12**.

19.     Plaintiff Chandler Rentals, LLC ("Chandler Rentals") owns twenty-three (23) residential rental units in Salisbury.  As a result of the Salisbury Act, Chandler Rentals has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Chandler Rentals provides to its tenants, as well as Chandler Rentals' ability to receive a fair return on its properties.  *See* Declaration of Gary Chandler, attached as **Exhibit 13**.

20.     Plaintiff GNI, LLC ("GNI") owns two hundred and eighty-five (285) residential rental units in Salisbury.  As a result of the Salisbury Act, GNI has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in

effect, it will adversely affect the services GNI provides to its tenants, as well as GNI's ability to receive a fair return on its properties. *See* Declaration of Gary Chandler, attached as **Exhibit 14**.

21.     Plaintiff L & S Properties, LLP ("L & S") owns thirty-three (33) residential rental units in Salisbury.  As a result of the Salisbury Act, L & S has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services L & S provides to its tenants, as well as L & S's ability to receive a fair return on its properties. *See* Declaration of Gary Chandler, attached as **Exhibit 15**.

22.     Plaintiff RCP, LLC ("RCP") owns one hundred and eight (108) residential rental units in Salisbury.  As a result of the Salisbury Act, RCP has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services RCP provides to its tenants, as well as RCP's ability to receive a fair return on its properties. *See* Declaration of Gary Chandler, attached as **Exhibit 16**.

23.     Plaintiff Rainbow Partnership, LLP ("Rainbow") owns nineteen (19) residential rental units in Salisbury.  As a result of the Salisbury Act, Rainbow has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Rainbow provides to its tenants, as well as Rainbow's ability to receive a fair return on its properties. *See* Declaration of Gary Chandler, attached as **Exhibit 17**.

24.     Plaintiff RSWL Associates, LLP ("RSWL") owns fifty-four (54) residential rental units in Salisbury.  As a result of the Salisbury Act, RSWL has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services RSWL provides to its tenants, as well as RSWL's ability to receive a fair return on its properties. *See* Declaration of Gary Chandler, attached as **Exhibit 18**.

25.     Plaintiff RSWL-Two Associates, LLP ("RSWL-Two") owns thirty-six (36) residential rental units in Salisbury.  As a result of the Salisbury Act, RSWL-Two has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services RSWL-Two provides to its tenants, as well as RSWL-Two's ability to receive a fair return on its properties.  *See* Declaration of Gary Chandler, attached as **Exhibit 19**.

26.     Plaintiff Chandler Trusts, LLP ("Chandler Trusts") owns nine (9) residential rental units in Salisbury.  As a result of the Salisbury Act, Chandler Trusts has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Chandler Trusts provides to its tenants, as well as Chandler Trusts' ability to receive a fair return on its properties.  *See* Declaration of Gary Chandler, attached as **Exhibit 20**.

27.     Plaintiff HE, LLC ("HE") owns fourteen (14) residential rental units in Salisbury. As a result of the Salisbury Act, HE has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services HE provides to its tenants, as well as HE's ability to receive a fair return on its properties.  *See* Declaration of Gary Chandler, attached as **Exhibit 21**.

28.     Plaintiff A&J Rentals, LLC ("A&J") owns three (3) residential rental units in Salisbury.  As a result of the Salisbury Act, A&J has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services A&J provides to its tenants, as well as A&J's ability to receive a fair return on its properties.  *See* Declaration of Gary Chandler, attached as **Exhibit 22**.

29.     Plaintiff March Mor, LLC ("March Mor") owns fifteen (15) residential rental units in Salisbury.  As a result of the Salisbury Act, March Mor has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services March Mor provides to its tenants, as well as March Mor's ability to receive a fair return on its properties.  *See* Declaration of Gary Chandler, attached as **Exhibit 23**.

30.     Plaintiff Columbia Choice Apartments, LLC ("Columbia") owns two hundred and thirty-four (234) residential rental units in Howard County, Maryland.  As a result of the Howard County Act, Columbia has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Howard County Act remains in effect, it will adversely affect the services Columbia provides to its tenants, as well as Columbia's ability to receive a fair return on its properties.  *See* Declaration of Ralph Rieder, attached as **Exhibit 24**.

31.     Plaintiff Columbia Stonehaven Associates, LLC ("Stonehaven") owns two hundred (200) residential rental units in Howard County, Maryland.  As a result of the Howard County Act, Stonehaven has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Howard County Act remains in effect, it will adversely affect the services Stonehaven provides to its tenants, as well as Stonehaven's ability to receive a fair return on its properties.  *See* Declaration of Ralph Rieder, attached as **Exhibit 25**.

32.     Plaintiff Oceans Alliance Realty, LLC ("Oceans Alliance") owns sixteen (16) residential rental units in Salisbury.  As a result of the Salisbury Act, Oceans Alliance has been retroactively deprived of its vested rights in settled, agreed-upon rent increases.  As long as the Salisbury Act remains in effect, it will adversely affect the services Oceans Alliance provides to

its tenants, as well as Oceans Alliance's ability to receive a fair return on its properties.  *See* Declaration of Bret Hopkins, attached as **Exhibit 26**.

33.     Defendant Mayor and City Council of Baltimore is a body corporate, established and existing under Article 1, Section 1 of the Charter of Baltimore City.

34.     Defendant Howard County, Maryland is a body corporate, established and existing under Section 101 of the Howard County Charter.

35.     Defendant City of Salisbury is body corporate in Wicomico County, Maryland, established and existing under Section SC1-1 of the Salisbury Charter.

## JURISDICTION AND VENUE

36.     The United States District Court for the District of Maryland has personal jurisdiction over Defendants.  Defendants are local governments established and existing under Maryland law.  Additionally, the conduct giving rise to Plaintiffs' claims occurred in Maryland.

37.     This action is brought under 42 U.S.C. § 1983 and the inherent authority of federal courts to protect rights safeguarded by the Constitution and laws of the United States, in particular:

      a.     the takings clause of the Fifth Amendment, U.S. Const., amend. V, incorporated against the States by the Fourteenth Amendment, U.S. Const., amend. XIV;

      b.     the due process clause of the Fourteenth Amendment;

      c.     the equal protection clause of the Fourteenth Amendment; and

      d.     the contracts clause, U.S. Const., art. I, § 10.

38.     Additionally, this action raises related claims arising under the Maryland Constitution and Declaration of Rights, in particular:

      a.     the takings clause of the Maryland Constitution, Art. 3, § 40; and

      b.     the due process clause of the Declaration of Rights, Art. 24.

39.     Additionally, this action raises related state law claims of tortious interference with contractual and business relations, arising under Maryland common law.  To the extent these or any state law claims raised in this Complaint are subject to the Local Government Tort Claims Act, Sections 5-301 *et seq.* of the Courts and Judicial Proceedings Article of the Maryland Code, Plaintiffs have complied with the statute's notice provision by service of this Complaint within the statutory notice period.

40.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 2201, and 42 U.S.C. § 3613.  Plaintiffs seek an award of their attorneys' fees pursuant to 42 U.S.C. § 1988(b).

41.     Venue is proper pursuant to 28 U.S.C. § 1391, as the events giving rise to the claims alleged herein have occurred, and will continue to occur, in this district and because the properties and entities that are the subject of this action are located in this district.

## FACTUAL BACKGROUND

### A.     Governor Hogan's Declaration of Catastrophic Health Emergency

42.     On March 5, 2020, Governor Lawrence J. Hogan, acting under Section 14-3A-2 of the Public Safety Article of the Maryland Code, declared a catastrophic health emergency in Maryland due to the spread of the novel coronavirus, SARS-CoV-2, and the disease it causes, COVID-19.  *See* Proclamation, "Declaration of State of Emergency and Existence of Catastrophic Health Emergency – COVID-19" (March 5, 2020), *available at* https://governor.maryland.gov/wp-content/uploads/2020/03/Proclamation-COVID-19.pdf.  The Governor has since continued to renew the emergency declaration.[3]

---

[3] "The Governor may renew [a catastrophic health emergency declaration] for successive periods, each not to exceed 30 days, if the Governor determines that a catastrophic health emergency continues to exist."  MD. CODE ANN., PUBLIC SAFETY, § 14-3A-02(c)(3).

43.     Under the authority conferred by the declaration, the Governor has issued several executive orders and related interpretive guidance.  While some aspects of the Governor's executive orders have been relaxed, the Governor has not ended the state of emergency or signaled that he intends to do so anytime soon.  Given the novel and unpredictable nature of this global health matter, it could be years before Governor Hogan (or one of his successors) finally ends the state of emergency.[4]

44.     While most of the Governor's emergency executive orders have been public health measures, the Governor has also issued several emergency executive orders related to the economic fallout of the pandemic.  Of relevance here, on March 16, 2020, the Governor issued an order prohibiting the eviction of any tenant who has suffered "Substantial Loss of Income."  That order remains in effect and, by its terms, will continue in effect until the declared state of emergency ends or the order is otherwise rescinded.  *See* Order Number 20-04-03-01, "Temporarily Prohibiting Evictions of Tenants Suffering Substantial Loss of Income Due to COVID-19" (March 16, 2020), *available at*: https://governor.maryland.gov/wp-content/uploads/2020/03/Executive-Order-Temp-Evictions-Prohibiting.pdf.[5]

45.     Additionally, the Chief Judge of the Court of Appeals of Maryland, Judge Mary Ellen Barbera, has suspended all residential evictions through at least July 25, 2020.  *See* "Amended Administrative Order Lifting the Suspension During the COVID-19 Emergency of

---

[4] By comparison, numerous national states of emergencies have remained in effect or have been repeatedly renewed for years, and even decades.  *See, e.g.,* BRENNAN CENTER FOR JUSTICE, "Declared National Emergencies Under the National Emergencies Act, 1978-2018."  For example, the national state of emergency implemented one day after the World Trade Center attack on September 11, 2001 remains in effect nearly 20 years later.  *Id.* at 4.

[5] Order No. 20-04-03-01 was amended and superseded by the Governor on April 3, 2020, among other things expanding the scope of the Order to include all residential, commercial and industrial tenancies.  *Available at*: https://governor.maryland.gov/wp-content/uploads/2020/04/Evictions-Repossessions-Foreclosure-AMENDED-4.3.20.pdf.

Foreclosures, Evictions, and Other Ejectments Involving Residences" (June 3, 2020), *available at*:

https://www.courts.state.md.us/sites/default/files/admin-orders/20200603amendedliftingsuspensionduringcovidofforeclosuresevictionsandotherejectmentsinvolvingresidences.pdf.  And according to the Maryland Judiciary's phased plan for reopening and resuming hearings, courts in Maryland will not even begin holding hearings on tenant holding over actions until July 20, 2020 and on failure to pay rent cases until August 31, 2020 (phase IV). *See* "Amended Administrative Order on the Progressive Resumption of Full Function of Judiciary Operations Previously Restricted Due to the COVID-19 Emergency" (June 3, 2020), at Exhibit pp. 13, 17, *available at*: https://www.courts.state.md.us/sites/default/files/admin-orders/20200603amendedprogressiveresumptionoffullfunctionofjudiciaryoperations.pdf.

### B.     The Baltimore City Act

46.     On May 11, 2020, the Baltimore City Council passed the Rent Increase Protection Act (Council Bill No. 20-0526).  On May 19, 2020, Mayor Bernard C. "Jack" Young signed the bill into law.  The Baltimore City Act is now codified in Article 13, Section 8-4, of the Baltimore City Code.

47.     The Baltimore City Act prohibits any housing provider from increasing a tenant's rent during the Governor's declared catastrophic health emergency.  It also prohibits any housing provider from notifying a tenant of an anticipated rent increase during the declared emergency or within ninety (90) days after the emergency ends.  Additionally, it retroactively voids any rent increase already agreed to by a tenant if the increase has taken effect or would take effect during the declared emergency; and it mandates that any housing provider who has previously notified a tenant of an anticipated rent increase must now send the tenant written notice to disregard the

increase if the increase has taken effect or would take effect during the declared emergency. Specifically, the Baltimore City Act provides:

> (a) *"Emergency" defined.*
>
>> In this section, "emergency" means the catastrophic health emergency declared by the Governor of Maryland on March 5, 2020, as amended or extended by the Governor, under State Public Safety Article, § 14-3A-02.
>
> . . . .
>
> *(c) In general.*
>
>> A landlord[6] may not increase a tenant's rental fee if:
>>
>>> (1) the increase would take effect during an emergency; or
>>>
>>> (2) notice of the increase is not in compliance with subsection (d) of this section.
>
> *(d) Notice of rent adjustment.*
>
>> (1) *In general.*
>>
>> During an emergency and within 90 days after the expiration of an emergency, a landlord may not notify a tenant of a rental fee increase.
>>
>> (2) *Pre-emergency rent increase notices.*
>>
>> A landlord must inform a tenant in writing to disregard any notice of a rental fee increase if:
>>
>>> (i) the landlord provided the notice to the tenant prior to an emergency; and

---

[6] The Baltimore City Code defines "landlord" as: "an owner, lessor, sublessor, assignee, or agent of any thereof or other person receiving or entitled to receive rents or benefits for the use or occupancy of any dwelling or rooming unit, including any person who has an option to buy or who has entered into a contract to buy any dwelling or rooming unit with the intent to offer such dwelling or rooming unit for rent." BALTIMORE CITY CODE, Art. 13, § 8-1(c).

(ii) the effective date of the increase would occur on
or after the date the emergency began.

BALTIMORE CITY CODE, Art. 13, § 8-4.

48.     The Baltimore City Act further provides that the prohibition on rent increases "only applies to rental fee increases on existing tenants" and does not apply "to leases for new tenants."[7] *Id.*

49.     The Baltimore City Act also provides that the prohibition on rent increases does not apply "to any public housing authority who must comply with federal laws, regulations, or other federal requirements to determine a tenant's rental fee." *Id.*  In this respect, the Baltimore City Act unfairly and unlawfully discriminates against housing providers who are not the Housing Authority of Baltimore City.  The Housing Authority of Baltimore City (an instrumentality of Defendant Baltimore City) does not have to comply with the law's burdensome terms.

50.     Additionally the Baltimore City Act prohibits any housing provider from assessing any "late fees" during the Governor's declared catastrophic health emergency.  Specifically, it provides:

(e) *Late fees prohibited.*

(1) *"Late fee" defined.*

(i) In this subsection, "late fee" means any additional charge or fee imposed because a rental fee is not made when the rental fee is due under the terms of a lease.

_____

[7] The Baltimore City Act's distinction between so-called "existing" and "new" tenants is arbitrary and ignores the very concept of leases.  When a tenant agrees to a rent increase, the rent increase takes effect during the tenant's next lease term.  Thus, while the tenant may be an "existing tenant," the rent only increases if the tenant enters into a new tenancy by renewing the lease.  By creating an irrational distinction between "existing" and "new" tenants, however, the Baltimore City Act appears to encourage a housing provider in need of additional rental income (for example, to cover the cost capital improvements to the property) to not renew a lease with an "existing" tenant, so that it can lease the property to a "new" tenant for a fair price.

(ii) "Late fee" includes a fee imposed:

(A) as a flat rate;

(B) as a percentage of the rental fee due; or

(C) in any other terms.

(2) *In general.*

A landlord may not charge, assess, or otherwise seek to collect a late fee from a tenant for the nonpayment or the late payment of a rental fee that comes due during an emergency.

*Id.*

51.     In addition, the Baltimore City Act puts into place a fine and enforcement mechanism, to be implemented by the Environmental Control Board, whereby anyone who violates its provisions may be issued a "citation to enforce this subtitle," a remedy which also "does not preclude pursuing any other civil or criminal remedy or enforcement action authorized by law."  *Id.*  Moreover, "each day a violation continues is a separate offense," creating a multiplicative penalty scheme that can subject housing providers to fines of up to $1,000 per day for each rental unit, even for good-faith violations.  *Id.*; *see also id.* at Article 1, § 40-14(e)(1).

52.     Unlike the Governor's declared catastrophic health emergency and the executive orders that followed it, the Baltimore City Act was not enacted pursuant to any emergency powers of, or delegated to, Baltimore City.  Additionally, it was not enacted out of immediate necessity, as it was signed into law more than two months after the Governor declared a catastrophic health emergency on March 5, 2020 and more than three weeks after the bill was first introduced in the City Council for debate and deliberations.

53.     The Baltimore City Act states that it "is effective retroactively from March 5, 2020." *Id.*  But in reality, it is actually more retroactive than that because it voids lease terms that were agreed to before March 5, 2020, if they took effect or would take effect after March 5, 2020.

54.     The Baltimore City Act applies to all tenants with an existing lease (except for Housing Authority of Baltimore City tenants), and it applies to all housing providers.[8]  It is not tailored in any way (let alone a rational way) to the interest of protecting tenants who have been particularly affected by the public health emergency underlying the Governor's emergency declaration or related economic ramifications.  The Baltimore City Act has no exceptions and no mechanism for a housing provider to seek an exception based on its or the tenant's individual circumstances or particular conditions affecting the rental property.  Additionally, as long as the Baltimore City Act remains in effect, it unlawfully prohibits housing providers from exercising their renewal rights (which include the right to increase rent) in existing leases.  Essentially, the Baltimore City Act arbitrarily and unlawfully foists all of its retroactive and indefinite-in-duration burdens onto housing providers as a class.

**C.     The Howard County Act**

55.     On May 22, 2020, the Howard County Council passed the Rental Protection and Stability Act (Council Bill No. CB33-2020).  On May 23, 2020, Howard County Executive Calvin Ball signed the bill into law.  The Howard County Act is now codified in Title 17, Subtitle 12 (Section 17.1200) of the Howard County Code.

56.     The Howard County Act prohibits any housing provider from increasing a tenant's rent during the Governor's declared catastrophic health emergency or within three (3) months after the emergency ends.  It also prohibits any housing provider from notifying a tenant of an

---

[8] *See supra* at note 6.

anticipated rent increase during the declared emergency or within three (3) months after the emergency ends.  Additionally, it retroactively voids any rent increase already agreed to by a tenant if the increase has taken effect or would take effect during the Governor's declared emergency; and it mandates that any housing provider who has previously notified a tenant of an anticipated rent increase must now send the tenant written notice to disregard the increase if the increase has taken effect or would take effect during the declared emergency.  Specifically, the Howard County Act provides:

(A) SCOPE

(1)   EXCEPT AS PROVIDED IN SUBSECTION (D) OF THIS SECTION,[9] THIS SECTION APPLIES DURING

THE CATASTROPHIC HEALTH EMERGENCY DECLARED BY THE GOVERNOR OF MARYLAND ON MARCH 5, 2020, AS AMENDED OR EXTENDED BY THE GOVERNOR, UNDER SECTION 14-3A-02 OF THE PUBLIC SAFETY ARTICLE OF THE MARYLAND CODE

. . . .

(3) THIS SECTION APPLIES TO RENTED HOUSING OF ALL KINDS INCLUDING MOBILE HOMES AND MOBILE HOME LOTS AND RENTED COMMERCIAL SPACE OF ALL KINDS.

. . . .

(B) IN GENERAL

DURING THE EMERGENCY, AND FOR A PERIOD OF TIME AFTER THE EMERGENCY EQUAL TO THE DURATION OF THE EMERGENCY BUT NO LONGER THAN THREE MONTHS, A LANDLORD[10]OR MOBILE HOME PARK OWNER SHALL NOT:

---

[9] Subsection (d), addressing permitted landlord-tenant rent payment plans, is not at issue or being challenged in this action.

[10] Under the Howard County Code, "landlord" means:

(1)   INCREASE THE RENT OR MOBILE HOME PARK FEE OR PROPOSE A LEASE OR RENTAL AGREEMENT MODIFICATION TO INCREASE THE RENT OR MOBILE HOME PARK FEE;

. . . .

(C)  NOTICE

(1)   DURING THE EMERGENCY, AND FOR A PERIOD OF TIME AFTER THE EMERGENCY EQUAL TO THE DURATION OF THE EMERGENCY BUT NO LONGER THAN THREE MONTHS, A LANDLORD OR MOBILE PARK OWNER SHALL NOT NOTIFY A TENANT OR MOBILE HOME PARK RESIDENT OF ANY CHANGE IN A LEASE THAT VIOLATES SUBSECTION (B) OF THIS SECTION.

(2)   A LANDLORD OR MOBILE HOME PARK OWNER MUST INFORM A TENANT OR MOBILE HOME RESIDENT IN WRITING TO DISREGARD ANY SUCH NOTICE OF A MATERIAL CHANGE TO THE LEASE OR RENTAL AGREEMENT IF:

(I)   THE LANDLORD OR MOBILE PARK HOME OWNER PROVIDED THE NOTICE TO THE TENANT OR MOBILE HOME PARK RESIDENT BEFORE OR DURING THE EMERGENCY; AND

(II)   THE EFFECTIVE DATE OF THE MATERIAL CHANGE WOULD OCCUR IN VIOLATION OF SUBSECTION (B) OF THIS SECTION.

HOWARD COUNTY CODE, Title 17, §17.1200.

------

(i) The owner, the owner's agent, a lessor, or a sublessor of a dwelling unit who is authorized to exercise any aspect of the management of the premises;

(ii) In a condominium housing structure, the owner of a dwelling unit that is designated, intended, or arranged for use or occupancy as a residence and for which the owner receives consideration; and

(iii) In a cooperative housing structure, a person having an ownership interest in the legal entity that holds title to the cooperative housing structure and enjoys exclusive use of a dwelling unit and for which the person who has an ownership interest in the legal entity receives consideration for leasing the dwelling unit.

HOWARD COUNTY CODE, Title 17, §17.1000(h)(1).

57.     Additionally, the Howard County Act prohibits any housing provider from assessing any fees for "nonpayment or late payment of rent" during the Governor's declared catastrophic health emergency or within three (3) months after the emergency ends.  Specifically, it provides:

> (B)  IN GENERAL
>
> DURING THE EMERGENCY, AND FOR A PERIOD OF TIME AFTER THE EMERGENCY EQUAL TO THE DURATION OF THE EMERGENCY BUT NO LONGER THAN THREE MONTHS, A LANDLORD OR MOBILE HOME PARK OWNER SHALL NOT:
>
> . . . .
>
> 4) CHARGE OR OTHERWISE ASSESS A TENANT OR RESIDENT FOR NONPAYMENT OR LATE PAYMENT OF RENT OR A MOBILE HOME PARK FEE; OR

*Id.* at §17.1200(B)(4)-(5).

58.     Under the Howard County Code provisions governing implementation and assessment of penalties or fines for civil violations such as these (*see* HOWARD COUNTY CODE, Title 24, §24.100 *et. seq.*), agencies enforcing the Howard County Act are authorized to assess penalties as high as $1,000 per single violation (*id.* at §24.107), and "[e]ach day that a violation continues after issuance of a notice of violation or citation shall be a separate violation."  *Id.* at §24.106.  Like the Baltimore City Act, the Howard County Act imposes a multiplicative penalty scheme that can subject housing providers to fines of up to $1,000 per day for each rental unit, even for good-faith violations.

59.     The Howard County Act was not enacted out of an immediate practical necessity, as it was signed into law three months after the Governor declared a catastrophic health emergency on March 5, 2020 and three weeks after the bill was first introduced in the County Council for debate and deliberations.

60.     The Howard County Act applies retroactively by voiding lease terms that were settled (and in many cases have already taken effect) before its enactment.  In fact, a proposed amendment, which would have made the Howard County Act prospective only, failed.  *See* Howard County Council Bill CB33-2020, Proposed Amendment No. 7, *available at*: https://apps.howardcountymd.gov/olis/PrintSummary.aspx?LegislationID=12504.

61.     The Howard County Act applies to all tenants with an existing lease, and it applies to all housing providers.[11]  It is not tailored in any way (let alone a rational way) to the interest of protecting tenants who have been particularly affected by the public health emergency underlying the Governor's emergency declaration or related economic ramifications.  Its prohibition on rent increases has no exceptions and no mechanism for a housing provider to seek an exception based on its or the tenant's individual circumstances or particular conditions affecting the rental property.  Additionally, as long as the Howard County Act remains in effect, it unlawfully prohibits housing providers from exercising their renewal rights (which include the right to increase rent) in existing leases.  Essentially, it arbitrarily and unlawfully foists all of its retroactive and indefinite-in-duration burdens onto housing providers as a class.

**D.     The Salisbury Act**

62.     On June 1, 2020, the Salisbury City Council passed an Ordinance of the City of Salisbury to Amend Chapter 15.26 Rental of Residential Premises of the Salisbury City Code by Adding Subsection 15.26.035 Rent Increases Barred During States of Emergency and Authorizing the Mayor to Issue Such Executive Orders as Are Necessary to Protect Tenants from Abuse (Ordinance No. 2599).  On June 1, Mayor Jacob R. Day signed the ordinance into law.  The Salisbury Act will be codified in Title 15, Subtitle 26 (Section 15.26) of the Salisbury City Code.

---

[11] *See supra* note 10.

63.     The Salisbury Act prohibits any housing provider from increasing a tenant's rent during the Governor's declared catastrophic health emergency or within ninety (90) days after the emergency ends.  Furthermore, its definition of "emergency" is not even limited to the Governor's current declared emergency; thus, it also applies during any future catastrophic health emergency declared by the Governor or any civil emergency declared by the Mayor of Salisbury.  The Salisbury Act also prohibits any housing provider from notifying a tenant of an anticipated rent increase during the emergency or within ninety (90) days after the emergency ends.  Additionally, it retroactively voids any rent increase already agreed to by a tenant if the increase has taken effect or would take effect during the emergency; and it mandates that any housing provider who has previously notified a tenant of an anticipated rent increase must now send the tenant written notice to disregard the increase if the increase has taken effect or would take effect during the emergency.  Specifically, the Salisbury Act provides:

> A. "Emergency" defined.
>     In this section, "Emergency" means the catastrophic health emergency declared by the Governor of Maryland on March 5, 2020, as amended or extended by the Governor, under State Public Safety Article, §14-3A-02, and such other emergencies as are declared by the Governor or the Mayor pursuant to SC17-4 of the City Charter and sections 2.08.020 and 9.08.220 of the Salisbury Municipal Code.
>
> . . . .
>
> C. In General.
>     A Landlord may not increase a tenant's rental fee if:
>         1. The increase would take effect during an Emergency; or
>         2. Notice of the increase is not incompliance with subsection (D) of this section.
>
> D. Notice of Rent Adjustment.
>         1. During an Emergency and within 90 days after the expiration of an Emergency, a landlord may not increase or notify a tenant of an increase in rent or a

> rental fee. Rental fees shall include any fee for service, a product or commodity provided by the landlord or by a third-party to a tenant prior to the declaration of an Emergency.
>
> 2. Pre-Emergency rent increase notices.
>
> A landlord must inform a tenant in writing to disregard any notice of a rental fee increase if:
>
>> i. The landlord provided the notice to the tenant prior to an Emergency; and
>>
>> ii. The effective date of the increase would occur on or after the date the Emergency began.

SALISBURY CITY CODE, Title 15, §15.26.35.

64.     The Salisbury Act further provides that the prohibition on rent increases "only applies to rental fee increases on existing tenants" and does not apply "to leases for new tenants."[12]

*Id.*

65.     The Salisbury Act also provides that the prohibition on rent increases does not apply "to any public housing authority who must comply with federal laws, regulations, or other federal requirements to determine a tenant's rental fee."  *Id.*  In this respect, the Salisbury Act unfairly and unlawfully discriminates against housing providers who are not public housing authorities.

66.     Additionally, the Salisbury Act prohibits any housing provider from assessing any "late fees" during the emergency.  Specifically, it provides:

> E. Late fees prohibited.
>> 1. "Late fee" defined.
>>> i. In this subsection, "late fee" means any additional charge or fee imposed because a

---

[12] The Salisbury Act's distinction between so-called "existing" and "new" tenants is arbitrary and ignores the very concept of leases.  When a tenant agrees to a rent increase, the rent increase takes effect during the tenant's next lease term.  Thus, while the tenant may be an "existing tenant," the rent only increases if the tenant enters into a new tenancy by renewing the lease.  By creating an irrational distinction between "existing" and "new" tenants, however, the Salisbury Act appears to encourage a housing provider in need of additional rental income (for example, to cover the cost capital improvements to the property) to not renew a lease with an "existing" tenant, so that it can lease the property to a "new" tenant for a fair price.

> rental fee is not made when the rental fee is
> due under the terms of a lease.
> ii. "Late fee" includes a fee imposed:
> a. as a flat rate;
> b. as a percentage of the rental fee due; or
> c. in any other terms.
> 2. In general.
> A landlord may not charge, assess, or otherwise seek
> to collect a late fee from a tenant for the nonpayment
> or the late payment of a rental fee that comes due
> during an emergency.

*Id.*

67.     Under the Salisbury City Code, code enforcement officials have the authority to "deliver a citation to any person alleged to be committing an infraction."  SALISBURY CITY CODE, Title 1, § 1.16.030.

68.     The Salisbury Act was not enacted out of an immediate practical necessity, as it was signed into law three months after the Governor declared a catastrophic health emergency on March 5, 2020 and three weeks after the bill was first introduced in the County Council for debate and deliberations.

69.     The Salisbury Act applies retroactively by voiding lease terms that were settled (and in many cases have already taken effect) before its enactment.

70.     The Salisbury Act applies to all tenants with an existing lease (except public housing authority tenants), and it applies to all housing providers.  It is not tailored in any way (let alone a rational way) to the interest of protecting tenants who have been particularly affected by the public health emergency underlying the Governor's emergency declaration or related economic ramifications.  Its prohibition on rent increases has no exceptions and no mechanism for a housing provider to seek an exception based on its or the tenant's individual circumstances or particular conditions affecting the rental property.  Additionally, as long as the Salisbury Act remains in

effect, it unlawfully prohibits housing providers from exercising their renewal rights (which include the right to increase rent) in existing leases.  Essentially, it arbitrarily and unlawfully foists all of its retroactive and indefinite-in-duration burdens onto housing providers as a class.

## COUNT ONE

**Taking Without Just Compensation – U.S. Const., Fifth Amend.; 42 U.S.C. § 1983
(Against All Defendants)**

71.     Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein.

72.     The takings clause of the Fifth Amendment to the United States Constitution, incorporated against the States by the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation."

73.     Defendants have caused, and will continue to cause, Plaintiffs to be deprived of their rights to possess, use, manage, and dispose of their property.  Defendants have done so, and will continue to do so, without providing just compensation to Plaintiffs.

74.     The Acts are unlawful confiscatory "regulatory takings."  In a blanket manner, they prohibit <u>any</u> housing provider from increasing <u>any</u> existing tenant's rent, or assessing <u>any</u> late fee, for an indefinite period of time, as long as the Governor's declared catastrophic health emergency lasts, and for ninety (90) days thereafter (or three (3) months thereafter under the Howard County Act).  But at the same time, they include no exceptions, and they provide for no individualized adjustment mechanisms to ensure housing providers receive reasonable returns on investments or otherwise avoid confiscatory results in their application.  Without any processes for individualized consideration, they are facially unconstitutional.[13]

_____

[13] The Court of Appeals of Maryland has observed: "A number of courts have found that rent control regulations may be considered to have a confiscatory effect 'if no rent adjustment

## COUNT TWO

**Taking Without Just Compensation – Md. Const., Art. 3, § 40; and
Md. Declaration of Rights, Art. 24
(Against All Defendants)**

75.      Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein.

76.      Article 3, Section 40 of the Maryland Declaration of Rights provides: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."   As political subdivisions of the State, Defendants are also bound by Article 3, Section 40 and may not take private property without just compensation.

77.      Additionally, the State's due process clause, Article 24 of the Maryland Declaration of Rights, prohibits the taking of private property without just compensation.

78.      Defendants have caused, and will continue to cause, Plaintiffs to be deprived of their rights to possess, use, manage, and dispose of their property.  Defendants have done so, and will continue to do so, without providing just compensation to Plaintiffs.

79.      The Acts are unlawful confiscatory "regulatory takings."  In a blanket manner, they prohibit any housing provider from increasing any existing tenant's rent, or assessing any late fee, for an indefinite period of time, as long as the Governor's declared catastrophic health emergency lasts, and for ninety (90) days thereafter (or three (3) months thereafter under the Howard County Act).  But at the same time, they include no exceptions, and they provide for no individualized

---

mechanism is provided' and the terms of the rent control ordinance 'will not permit those who administer it to avoid confiscatory results in its application to the complaining parties.'"  *Tyler v. City of College Park*, 3 A.3d 421, 444 (Md. 2010) (citation omitted).

adjustment mechanisms to ensure housing providers receive reasonable returns on investments or otherwise avoid confiscatory results in their application.  Without any processes for individualized consideration, they are facially unconstitutional.[14]

## COUNT THREE

### Violation of Vested Property Rights – Md. Const., Art. 3, § 40; and Md. Declaration of Rights, Art. 24 (Against All Defendants)

80.     Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein.

81.     Under Article 3, Section 40 of the Maryland Constitution and Article 24 of the Maryland Declaration of Rights, "[i]t has been firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights."[15] *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1072 (Md. 2002).

82.     "Retrospective statutes are those acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act."  *Muskin*, 30 A.3d at 969 (internal quotation omitted).

83.     The contractual right to receive rent payments is a property interest protected from retrospective infringement under Maryland law.  *Id.*

84.     By their plain terms, the Acts operate retrospectively and unlawfully deprive Plaintiffs of their vested rights in previously settled, agreed-upon lease terms that have already

---

[14] *See supra* note 13.

[15] "Article 24 of the . . . Declaration of Rights, guaranteeing due process of law, and Article III, § 40 of the Maryland Constitution, prohibiting retrospective taking of property without just compensation, have been shown, through a long line of Maryland cases, to prohibit the retrospective reach of statutes that would result in the taking of vested property rights."  *Muskin v. State Dept. of Assessments and Taxation*, 30 A.3d 962, 968 (Md. 2011).

taken effect or would take effect during the Governor's declared emergency, by prohibiting Plaintiffs from increasing rent in accordance with settled, agreed-upon lease terms; by requiring Plaintiffs to send notices to tenants directing them to disregard settled, agreed-upon lease terms; and by prohibiting Plaintiffs from assessing any fee for late or non-payment of rent in accordance with settled, agreed-upon lease terms.

### COUNT FOUR

**Substantive Due Process – U.S. Const., Fourteenth Amend.; 42 U.S.C. § 1983
(Against All Defendants)**

85.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

86.     The due process clause of the Fourteenth Amendment to the United States Constitution provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

87.     Plaintiffs have a valid, protected property interest in possessing, using, managing, and disposing of their property.  Additionally, Plaintiffs have a valid, protected property interest in leases with tenants and the contractual rights conferred under those leases.

88.     The Acts unconstitutionally infringe upon Plaintiffs' property rights in an irrational and arbitrary manner.  In particular, the Acts apply in a blanket and retroactive manner; they are not tailored in any way to the interest of protecting people who have been particularly affected by the public health emergency underlying the Governor's emergency declaration or its related economic ramifications.  They have no exceptions and no mechanisms for a housing provider to seek an exception based on its or the tenant's individual circumstances or particular conditions affecting the rental property.  Additionally, because the value of rental property derives from the ability to receive rent, the Acts unlawfully devalue Plaintiffs' properties by irrationally and

arbitrarily denying Plaintiffs the ability to increase rent.  And as long as the Acts remain in effect, they unlawfully prohibit Plaintiffs from exercising their renewal rights (which include the right to increase rent) in existing leases.  Exacerbating their overbreadth and retroactive effect, the Acts, while purportedly temporary in nature, have no definitive (or even anticipated) end-date.  They will run as long as the state of emergency lasts, and for ninety (90) days thereafter (or three (3) months thereafter under the Howard County Act).

## COUNT FIVE

**Substantive Due Process – Md. Declaration of Rights, Art. 24**
**(Against All Defendants)**

89.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

90.     Article 24 of the Maryland Declaration of Rights provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."  Article 24 is construed *in pari materia* with the due process clause of the Fourteenth Amendment.

91.     Plaintiffs have a valid, protected property interest in possessing, using, managing, and disposing of their property.  Additionally, Plaintiffs have a valid, protected property interest in leases with tenants and the contractual rights conferred under those leases.

92.     The Acts unconstitutionally infringe upon Plaintiffs' property rights in an irrational and arbitrary manner.  In particular, the Acts apply in a blanket and retroactive manner; they are not tailored in any way to the interest of protecting people who have been particularly affected by the public health emergency underlying the Governor's emergency declaration or its related economic ramifications.  They have no exceptions and no mechanisms for a housing provider to

seek an exception based on its or the tenant's individual circumstances or particular conditions affecting the rental property.  Additionally, because the value of rental property derives from the ability to receive rent, the Acts unlawfully devalue Plaintiffs' properties by irrationally and arbitrarily denying Plaintiffs the ability to increase rent.  And as long as the Acts remain in effect, they unlawfully prohibit Plaintiffs from exercising their renewal rights (which include the right to increase rent) in existing leases.  Exacerbating their overbreadth and retroactive effect, the Acts, while purportedly temporary in nature, have no definitive (or even anticipated) end-date.  They will run as long as the state of emergency lasts, and for ninety (90) days thereafter (or three (3) months thereafter under the Howard County Act).

## COUNT SIX

### Equal Protection Clause – U.S. Const., Fourteenth Amend.; 42 U.S.C. § 1983
### (Against All Defendants)

93.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

94.     The equal protection clause of the Fourteenth Amendment to the United States Constitution provides: "[N]or [shall any State] deny to any person within its jurisdiction the equal protection of the laws."

95.     Plaintiffs have a valid, protected property interest in possessing, using, managing, and disposing of their property.  Additionally, Plaintiffs have a valid, protected property interest in leases with tenants and the contractual rights conferred under those leases.

96.     The Acts infringe upon Plaintiffs' property rights in an unlawful discriminatory manner.  They have no exceptions and no mechanisms for a housing provider to seek an exception based on its or the tenant's individual circumstances or particular conditions affecting the rental property.  Additionally, because the value of rental property derives from the ability to receive

rent, the Acts unlawfully devalue Plaintiffs' properties by irrationally and arbitrarily denying Plaintiffs the ability to increase rent.  And as long as the Acts remain in effect, they unlawfully prohibit Plaintiffs from exercising their renewal rights (which include the right to increase rent) in existing leases.  Essentially, they arbitrarily and unlawfully foist all of its retroactive and indefinite-in-duration burdens onto housing providers as a class.  Exacerbating their overbreadth and retroactive effect, the Acts, while purportedly temporary in nature, have no definitive (or even anticipated) end-date.  They will run as long as the state of emergency lasts, and for ninety (90) days thereafter (or three (3) months thereafter under the Howard County Act).

97.     Additionally, none of Defendants has imposed remotely similar restrictions on any other class.  None has imposed price controls on grocers, plumbers, electricians, mechanics, or any other provider of essential goods or services.

## COUNT SEVEN

### Equal Protection of Laws – Md. Declaration of Rights, Art. 24
### (Against All Defendants)

98.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

99.     Courts construing Article 24 of the Maryland Declaration of Rights have recognized that it embodies the concept of equal protection of the laws, similar to the Fourteenth Amendment of the United States Constitution.

100.     Plaintiffs have a valid, protected property interest in possessing, using, managing, and disposing of their property.  Additionally, Plaintiffs have a valid, protected property interest in leases with tenants and the contractual rights conferred under those leases.

101.     The Acts infringe upon Plaintiffs' property rights in an unlawful discriminatory manner.  They have no exceptions and no mechanisms for a housing provider to seek an exception

based on its or the tenant's individual circumstances or particular conditions affecting the rental property.  Additionally, because the value of rental property derives from the ability to receive rent, the Acts unlawfully devalue Plaintiffs' properties by irrationally and arbitrarily denying Plaintiffs the ability to increase rent.  And as long as the Acts remain in effect, they unlawfully prohibit Plaintiffs from exercising their renewal rights (which include the right to increase rent) in existing leases.  Essentially, they arbitrarily and unlawfully foist all of its retroactive and indefinite-in-duration burdens onto housing providers as a class.  Exacerbating their overbreadth and retroactive effect, the Acts, while purportedly temporary in nature, have no definitive (or even anticipated) end-date.  They will run as long as the state of emergency lasts, and for ninety (90) days thereafter (or three (3) months thereafter under the Howard County Act).

102.    Additionally, none of Defendants has imposed remotely similar restrictions on any other class.  None has imposed price controls on grocers, plumbers, electricians, mechanics, or any other provider of essential goods or services.

## COUNT EIGHT

### Contracts Clause – U.S. Const., Art. 1, § 10; 42 U.S.C. § 1983
### (Against All Defendants)

103.    Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein.

104.    The contracts clause of Article 1, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

105.    Defendants, retroactively and for an indefinite period into the future, have caused and will continue Plaintiffs to suffer substantial impairment of their reasonable expectations in their contracts, namely their leases with their tenants.

106.     Because the Acts substantially impair Plaintiffs' contractual agreements and disrupt all reasonable expectations with respect to usual property regulations, they violate Plaintiffs' rights under the contracts clause to the United States Constitution.

## COUNT NINE

### Intentional Interference with Contractual or Business Relations
### (Against All Defendants)

107.     Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein.

108.     Defendants, by enactment of the foregoing Acts, have tortiously interfered with Plaintiffs' contractual agreements, and also tortiously and wrongfully interfered with Plaintiffs' business relations with their tenants.

109.     Defendants have wrongfully, intentionally and knowingly interfered with Plaintiffs' existing and prior contractual lease agreements with their tenants, effectively erasing from those lease agreements all explicit and implicit understandings that Plaintiffs could periodically raise rents on their tenants; and also actually nullifying and voiding prior lease agreements.

110.     Additionally, Defendants have wrongfully and maliciously interfered with Plaintiffs' contractual and business relations, past, present and future, to Plaintiffs' substantial and unfair detriment—including but not limited to reversing prior notices sent to tenants regarding expected rent increases, nullifying agreements for prospective rent increases in accordance with existing law, and preventing further business relations between Plaintiffs and their numerous tenants for an indefinite and potentially lengthy period into the future.

111.     Because Defendants enacted these laws intentionally, with clear knowledge of these prior lease agreements and numerous existing landlord-tenant business relationships, and

with clear knowledge of the numerous financial and other harms Plaintiffs have suffered and will suffer as a result of the Acts, Defendants have tortiously interfered with Plaintiffs' contractual and business relationships in violation of Maryland common law.

## COUNT TEN

**State Law Preemption**
**(Against All Defendants)**

112.    Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein.

101.    The concept of preemption of local law by state law "is grounded upon the authority of the General Assembly to reserve for itself exclusive dominion over an entire field of legislative concern.  When properly invoked, the doctrine precludes local legislative bodies from enacting any legislation whatsoever in the pre-empted field."  *Ad + Soil, Inc. v. County Com'rs of Queen Anne's County*, 513 A.2d 893, 902 (1986).

113.    The Acts' prohibitions of late fees are preempted by State law.

114.    By its express terms, Section 8-208(d)(3) of the Real Property Article of the Maryland Code allows housing providers to assess late fees, provided the late fees are not excessive under the statute:

> (d) A landlord may not use a lease or form of lease containing any provision that:
>
> (3)(i) Provides for a penalty for the late payment of rent in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent; or
>
> (ii) In the case of leases under which the rent is paid in weekly rental installments, provides for a late penalty of more than $3 per week or a total of no more than $12 per month . . . .

115.     Additionally, when the Governor, acting under his emergency powers, suspended portions of Sections 8-401 and -402.1 of the Real Property Article,[16] the Governor could have suspended late fees under Section 8-208(d)(3), but did not do so, thereby leaving intact the recognized allowance of late fees under State law.

116.      In banning all late fees, the Acts prohibit activity that State law permits and intends to permit.  Therefore, the Acts are preempted by State law.

**COUNT ELEVEN**

**Declaratory Judgment – 28 U.S.C. §2201**
**(Against All Defendants)**

117.     Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein.

118.     An actual controversy exists between the parties and warrants declaratory judgment to resolve the parties' respective rights with respect to the Baltimore City Act, the Howard County Act, and the Salisbury Act.

119.     Defendants have enacted the Acts, the pertinent provisions of which, as described above, are irrational and arbitrary and wrongly and substantially interfere with Plaintiffs' constitutional rights in their real property and contracts.

120.     It is necessary for this Court, exercising its authority and jurisdiction, and in the interest of justice, to declare these Acts unlawful, improper, and unconstitutional.

121.     The Court has independent grounds to exercise jurisdiction over this case.

---

[16]   *See*   https://governor.maryland.gov/wp-content/uploads/2020/04/Evictions-Repossessions-Foreclosure-AMENDED-4.3.20.pdf.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs'

favor and grant the following relief:

1. A declaration that the Baltimore City Act, Howard County Act, and Salisbury Act are facially unconstitutional, because they violate:

   a. The takings clause of the Fifth Amendment to the United States Constitution, as incorporated against the States by the Fourteenth Amendment;

   b. Article 3, Section 40 of the Maryland Constitution;

   c. Article 24 of the Maryland Declaration of Rights;

   d. The due process clause of the Fourteenth Amendment to the United States Constitution;

   e. The equal protection clause of the Fourteenth Amendment to the United States Constitution;

   f. The contracts clause of Article 1, Section 10 of the United States Constitution;

   g. The common law prohibitions against tortious interference with contractual and/or business relations; *and*

   h. The concept of local law preemption by State law;

2. A temporary restraining order enjoining Defendants from enforcing the Baltimore City, the Howard County Act, and the Salisbury Act;

3. A preliminary injunction enjoining Defendants from enforcing the Baltimore City Act, the Howard County Act, and the Salisbury Act;

4. A permanent injunction enjoining Defendants from enforcing the Baltimore City Act, the Howard County Act, and the Salisbury Act;

5. An award of just compensation in amounts to be determined at trial, such amounts being sufficient to make Plaintiffs whole by putting them in as good a position pecuniary as if their property had not been taken;

6. An award of fees, costs, expenses, and disbursements, including attorneys' fees and costs to which Plaintiffs are entitled pursuant to 42 U.S.C. §§ 1988 and 3613; and

7. Any such other and further relief as this Court deems just and proper.

Respectfully Submitted,


_____/s/_____
Michael A. Brown (Bar No. 07483)
Michael E. Blumenfeld (Bar No. 25062)
Peter W. Sheehan, Jr. (Bar No. 29310)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
100 S. Charles Street | Suite 1600
Baltimore, Maryland 21201
(443) 392-9415 (Telephone)
(443) 392-9499 (Facsimile)
mike.brown@nelsonmullins.com
michael.blumenfeld@nelsonmullins.com
peter.sheehan@nelsonmullins.com

*Attorneys for Plaintiffs*