# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

**CHAMBERS OF**
**STEPHANIE A. GALLAGHER**
**UNITED STATES DISTRICT JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**
**MDD_SAGchambers@mdd.uscourts.gov**

November 18, 2020

LETTER ORDER TO COUNSEL

  Re:  <u>Willowbrook Apartment Associates LLC, et al. v.</u>
     <u>Mayor & City Council of Baltimore, et al.</u>
     Civil Case No. SAG-20-1818

Dear Counsel,

  I am in receipt of the parties' cross-motions for summary judgment, ECF 60 and 63, and the accompanying opposition and reply briefing. ECF 64, 65. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth in this Letter Order, the cross-motions will be denied, and the Complaint will be dismissed without prejudice for want of justiciability.

  The case arises out of legislation passed by three local jurisdictions in response to the ongoing COVID-19 pandemic. Baltimore City, Howard County, and the City of Salisbury each adopted temporary measures to restrict landlords from increasing rent or assessing late fees to tenants (collectively, "the Acts"). The Acts, which were passed in May, 2020, contain an effective date of March 5, 2020, meaning that some newly prohibited rent increases had already taken effect when the Acts became law. The Baltimore City and Salisbury Acts contain potential sanctions that could be enforced against landlords found to be in violation. The Howard County Act contains no enforcement mechanism. *See* ECF 63-1 at 30 (Plaintiffs' memorandum conceding "Howard County has disavowed enforcing its Act with administrative prosecutions.").

  Plaintiffs are owners of rental units governed by the Acts. The Complaint attaches a boilerplate declaration from the property manager of each Plaintiff, which sets out (1) the number of units with rent increases that took effect between March 5, 2020 and the date of the declaration; (2) the number of existing tenants whose agreed rent increases were scheduled to begin in "weeks or months" from the date of the declaration; and (3) the number of written notices the Plaintiff "will need to send" to tenants, instructing them to disregard a prior rent increase notice. *See* ECF 1-4 through 1-26. The boilerplate declarations also state that the pandemic has increased Plaintiffs' expenses for "business continuity plans, public health incidents, tenant and staff safety protocols, and increased cleaning in offices and common areas." *See, e.g.*, ECF 1-5 ¶ 8. As a result, the declarations allege that the Acts "will adversely affect the services [each plaintiff] provides to its tenants, curtail its ability to have the flexibility to assist tenants who have been adversely affected by the COVID-19 emergency and limits [sic] [the plaintiff's] ability to receive a fair return on its

Willowbrook Apartment Associates LLC, et al. v.
Mayor & City Council of Baltimore, et al.
November 18, 2020
Page 2

properties." *Id.* Missing from the boilerplate declarations is any specific assertion of financial loss the plaintiff has suffered. In other words, the boilerplate declarations describe what will happen if each plaintiff complies with the Acts, but expressly does not indicate that any plaintiff has yet taken steps to comply with the Acts, to its own financial detriment.

In their motion for summary judgment, the defendant jurisdictions argue that Plaintiffs "lack standing and make no showing of an injury-in-fact arising out of the Acts." ECF 60-2 at 7. Assuming Plaintiffs are complying with the Acts, they easily could have established injury-in-fact by attaching updated declarations detailing the financial losses they have sustained since the Acts' passage. However, Plaintiffs proffered no such evidence. The Court, then, is left with only the Complaint's allegations, from months ago, of the speculative future harm that could accrue to Plaintiffs from compliance with the Acts' dictates. While Plaintiffs suggest that they are presented with a "Hobson's choice" between compliance and sanctions, they also have not alleged facts supporting a credible threat of prosecution or enforcement by any of the three jurisdictions. *See* ECF 63-1 at 30; *see also Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356 (4th Cir. 2020) (requiring a "credible threat of prosecution" to establish standing to mount a pre-enforcement challenge to a law). In particular, as noted above, Howard County's Act lacks any sanctions provision or other means of enforcement. It may therefore be an example of COVID-related guidance that jurisdictions enact in the hopes of engendering compliance to effect the jurisdiction's preferred societal goals. Howard County aside, there is no evidence before the Court of enforcement or threatened enforcement in the other jurisdictions in this suit.[1] The threat alleged by Plaintiffs is therefore conjectural at best, particularly given that many months have passed since the passage of these regulations with, apparently, no enforcement efforts to date.

All of Plaintiffs' constitutional arguments, including their takings arguments, rest on the unsubstantiated assumption that they are complying with the Acts' dictates by refunding already-collected rent to tenants and/or refraining from collecting rent increases to which they are otherwise entitled. Now, in November, 2020, roughly six months after the Acts' passage, if Plaintiffs are to suffer an injury-in-fact from these Acts, it presumably has already happened: either because Plaintiffs are in compliance with the Acts and have suffered ascertainable monetary loss, or because Plaintiffs are not in compliance with the Acts and have suffered some resulting enforcement-related threat or consequence. Without allegations of either scenario, Plaintiffs have failed to plead or demonstrate the harm sufficient to establish injury-in-fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring that the harm to establish standing be "actual or imminent, not 'conjectural' or 'hypothetical,'") (internal quotations omitted). Because this Court is not in "the habit of ... decid[ing] questions of a constitutional nature unless absolutely

---

[1] Plaintiffs make much of Defendants' failure to "disavow" future enforcement, and cite *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019), for the proposition that this failure makes the threat of future enforcement especially credible. *Davison*, however, very explicitly considered disavowal important in the context of specific instances of past enforcement. *Id.* at 679 (finding a credible threat of enforcement because the plaintiff had "been subject to past enforcement *and* . . . [the defendant] ha[d] not 'disavowed' future enforcement") (emphasis added). A failure to disavow future enforcement is significantly less relevant where, as here, there is no evidence of any enforcement in the first place.

<u>Willowbrook Apartment Associates LLC, et al. v.</u>
<u>Mayor & City Council of Baltimore, et al.</u>
November 18, 2020
Page 3

necessary to a decision of the case," it would be inappropriate to reach the remaining issues where Plaintiffs lack standing. *Flue-Cured Tobacco Coop. Stabilization Corp. v. E.P.A.*, 313 F.3d 852, 857 (4th Cir. 2002) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

Plaintiffs ultimately seek a judgement on the merits here without the sort of robust factual record that resolution of this constitutional dispute requires. The Court is unwilling to wade into such waters equipped with six-month-old affidavits, a complaint, and little else. Stale speculation—about future enforcement and possible actions they claimed they would have to take to avoid it—cannot sustain this cause of action, let alone provide grounds for a grant of summary judgment in Plaintiffs' favor.

Nonetheless, summary judgment in Defendants' favor would be inappropriate in these circumstances, particularly given the relative likelihood that Plaintiffs will be able to establish standing by making the required evidentiary showing. Accordingly, the cross-motions for summary judgment, ECF 60 and 63, will be DENIED without prejudice, the Complaint will be dismissed without prejudice for lack of jurisdiction, and Plaintiffs will be afforded twenty-one days to file an Amended Complaint, if desired. If no Amended Complaint is filed, the dismissal will convert to dismissal with prejudice and the case will be closed.

Despite the informal nature of this letter, it is an Order of the Court and will be docketed as such.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge